J-A15037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JANE DOE, AS PARENT AND NATURAL GUARDIAN OF JOHN DOE, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| THE WOODS SCHOOLS, CRESTWOOD SERVICES, INC., WOODS SERVICES, INC. AND WOODS SERVICES FOUNDATION | |
| Appellee | No. 2700 EDA 2015 |

Appeal from the Order Entered July 21, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2015 No. 1586

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 09, 2016**

Jane Doe, the parent and natural guardian of John Doe, a minor, appeals an order sustaining appellees'[1] preliminary objections and transferring venue to the Court of Common Pleas of Bucks County.  We affirm.

On February 12, 2015, Jane Doe filed this civil action in the Court of Common Pleas of Philadelphia County.  Her complaint alleged that she is the parent of John Doe, a blind and mentally retarded minor who lives at the

---

[1] Appellees include the Woods Schools, Crestwood Services, Inc., Woods Services, Inc. ("WSI") and Woods Services Foundation (collectively "the Woods entities").

1

Woods Schools, a full time residential care and treatment center in Langhorne, Bucks County.

The complaint alleged that on July 14, 2013, a Woods Schools employee raped John Doe on school premises. Based on this incident, Jane Doe sought damages against the Woods entities for negligent supervision and other torts. All defendants filed preliminary objections alleging improper venue under Pa.R.Civ.P. 1006. The court ordered discovery on the issue of venue and subsequently entered an order transferring venue to Bucks County. Doe filed a timely appeal, and both Doe and the court complied with Pa.R.A.P. 1925.

Doe raises one argument in this appeal:

Whether the Trial Court erred in sustaining the [Woods Entities'] Preliminary Objection and Memorandum of Law in support thereof and transferring venue to the Bucks County Court of Common Pleas when [Doe's] Complaint and limited discovery, including deposition testimony, educe that [the Woods Entities] regularly conduct business in Philadelphia County?

Brief For Appellant, at 3. This argument consists of two subarguments: (1) the Woods entities' contacts with Philadelphia are sufficient to establish venue in Philadelphia; and (2) Tabor Children's Services, Inc.'s contacts with WSI are attributable to the Woods Entities for purposes of determining venue. We address each subargument separately.

Parties who file preliminary objections to venue bear the burden of proving that a change of venue is necessary. *Zampana-Barry v. Donaghue*, 921 A.2d 500, 503 (Pa.Super.2007). We review the trial court's

decision to transfer venue for abuse of discretion. ***Schultz v. MMI Products, Inc.***, 30 A.3d 1224, 1230 (Pa.Super.2011). Each case turns on its individual facts. ***Id.*** at 1227.

Doe's first subargument is that the Woods entities' contacts with Philadelphia are sufficient to establish venue in Philadelphia County. Pennsylvania Rule of Civil Procedure 1006 provides in pertinent part:

**Rule 1006. Venue. Change of Venue**

(a) Except as otherwise provided by subdivisions (a.1), (b) and (c) of this rule, an action against an individual may be brought in and only in a county in which

(1) the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law, or

* * *

(b) Actions against the following defendants, except as otherwise provided in subdivision (c), may be brought in and only in the counties designated by the following rules: political subdivisions, Rule 2103; partnerships, Rule 2130; unincorporated associations, Rule 2156; **corporations and similar entities, Rule 2179.**

(c)(1) Except as otherwise provided by paragraph (2), an action to enforce a **joint or joint and several liability** against two or more defendants, except actions in which the Commonwealth is a party defendant, may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules of subdivisions (a) or (b) …

(e) Improper venue shall be raised by preliminary objection and if not so raised shall be waived. If a preliminary objection to venue is sustained and there is a county of proper venue within the State the action shall not be dismissed but shall be transferred to the appropriate court of that county. The costs

and fees for transfer and removal of the record shall be paid by the plaintiff.

In turn, Pennsylvania Rule of Civil Procedure 2179 provides, with exceptions not relevant here, that a personal action against a corporation or similar entity may be brought in and only in:

(1) the county where its registered office or principal place of business is located;
(2) a county where it regularly conducts business;
(3) the county where the cause of action arose; or
(4) a county where a transaction or occurrence took place out of which the cause of action arose.

Pa.R.C.P. 2179(a).

During a deposition on the venue question, Scott Spreat, WSI's chief executive officer, testified that the Woods Schools are located in Bucks County and are operated by WSI. The schools accept residents from across the Commonwealth and beyond, but Philadelphia is the largest provider of residents. Approximately 23% of the residents come from Philadelphia, and 5% of WSI's total income comes from contracts with Philadelphia agencies. WSI has a contract with the Philadelphia School District under which the School District transports students to the Woods Schools for classes. Spreat admitted that the contracts with Philadelphia agencies are a necessary component to WSI's business. WSI also accepts residents from the Philadelphia Department of Human Services and CBH, which handles mental health issues for children in Philadelphia. When deciding whether to accept an applicant, WSI sends a representative to his home, whether it be in Philadelphia or elsewhere, to evaluate him and determine if he is a good fit.

A business entity must perform acts in a county of sufficient quality *and* quantity to establish venue in that county. ***Zampana-Barry***, 921 A.2d at 503. In this case, there is a sufficient quantity of acts to establish venue in Philadelphia in this case, but the quality of acts is insufficient.

The quality of a business entity's acts is sufficient

> if [it] performs acts in a county that directly further or are essential to [its] business objective; incidental acts in the county are not sufficient to meet the quality aspect of the test. [***Purcell v. Bryn Mawr Hospital***, 579 A.2d 1282, 1284 (1990)] Acts that aid a main purpose are collateral and incidental while those necessary to an entity's existence are direct. ***Id.*** (incidental acts include advertising, solicitation of business from a county, education programs for personnel in county, hiring of personnel from the county, and purchase of supplies from county); ***see also Krosnowski v. Ward***, 836 A.2d 143, 147 (Pa.Super.2003) (*en banc*) (business referrals to and from an independently operated business entity in another county do not establish venue in that county as referrals were in aid of main business purpose and not actual conduct of business in that county).

***Zampana-Barry***, 921 A.2d at 503-04.[2]

_____

[2] For decisions in which contacts were sufficient in quality, ***see Zampana-Barry***, 921 A.2d at 505 (in legal malpractice action against law firm, firm's acts in Philadelphia were of sufficient quality to show that firm regularly conducted business in Philadelphia; firm's sole objective was to represent clients in legal actions, such representation was essential to firm's existence, and firm did work in Philadelphia to further this sole business objective); ***Monaco v. Montgomery Cab Co.***, 208 A.2d 252, 256 (Pa.1965) (taxi company regularly conducted business in Philadelphia County by dropping off customers there, since "acts of driving into Philadelphia County at the request of customers and collecting fares there were … directly essential to and in furtherance of corporate objects and, therefore, were of sufficient quality"). For cases holding that contacts were insufficient in quality, ***see Fritz v. Glen Mills Schools***, 840 A.2d 1021, 1024 (Pa.Super.2003) (fact that students from Philadelphia County attended school in Delaware County
*(Footnote Continued Next Page)*

Acts are sufficient in quantity when they are sufficiently continuous so as to be considered habitual. **Purcell**, 579 A.2d at 1284. For example, we held in **Zampana-Barry** that a law firm's acts were of sufficient quantity for purposes of establishing venue in Philadelphia County where the firm conducted 3-5% of its legal services in Philadelphia for many years.[3]

_(Footnote Continued)_ ————————————

did not mean that school performed acts in furtherance of its main purpose in Philadelphia); **Masel v. Glassman**, 689 A.2d 314, 318 (Pa.Super.1997) (venue not proper in Philadelphia where hospital provided all of its medical services in Bucks County, and patients from Philadelphia traveled to hospital facilities in Bucks County).

[3] For other decisions that acts were sufficient in quantity, **see Canter v. American Honda Motor Corp.**, 231 A.2d 140 (Pa.1967) (venue proper in Philadelphia where Delaware County car dealership regularly conducted 1-2% of business in Philadelphia by traveling into Philadelphia to demonstrate cars and complete sales); **Monaco, supra** (although taxi company was prohibited from picking up customers in Philadelphia, venue was proper in Philadelphia because it obtained 5-10% of gross revenue from picking customers up in Montgomery County and dropping them off in Philadelphia). For decisions that the quantity of acts were insufficient, **see Singley v. Flier**, 851 A.2d 200, 203 (Pa.Super.2004) (quantity of Villanova University's acts insufficient to establish venue in Philadelphia, even though it held three courses in Philadelphia and many Philadelphia residents attend Villanova, because Villanova did not have Philadelphia campus or own or operate real estate there); **Mathues v. Tim-Bar Corp.**, 652 A.2d 349, 351 (Pa.Super.1994) (venue improper in employee's action against employer in Montgomery County, where employer's offices were in York and Adams Counties, and employer had "isolated and limited" acts in Montgomery County and only 2-3 sales transactions there); **Battuello v. Camelback Ski Corp.**, 598 A.2d 1027, 1029-30 (Pa.Super.1991) (venue in Philadelphia improper in personal injury action against Monroe County ski resort, despite plaintiff's claim that Philadelphia-based tour company regularly sent customers to ski resort, where only 5% of resort's customers were from Philadelphia, less than 1% of resort's business came from tour company, _(Footnote Continued Next Page)_

Here, 23% of the residents at the Woods Schools come from Philadelphia, and 5% of WSI's total income comes from contracts with Philadelphia agencies. Thus, the quantity of acts in Philadelphia is sufficient to establish venue there. On the other hand, the quality of the Woods entities' contacts with Philadelphia is insufficient. The purpose of the schools is to provide residential care and educational opportunities to individuals with disabilities. This core function takes place in Bucks County, where school residents receive the full panoply of services, including housing, education and healthcare, such as doctors' visits and mental health treatment. Similar to **Fritz** and **Masel**, the fact that many individuals from Philadelphia obtain services from the Woods Schools in Bucks County is not sufficient to establish venue in Philadelphia.

Doe's second subargument is that the contacts of Tabor Children's Services, Inc. with WSI should be attributable to the Woods Entities for purposes of establishing venue in Philadelphia. We disagree.

Doe argues: **(1)** Tabor Children's Services, Inc. ("Tabor"), a non-party which operates in Philadelphia, is a subsidiary of Woods Resources, another non-party; **(2)** Woods Resources and WSI are "essentially the same entity" (i.e., alter egos); **(3)** therefore, Tabor is effectively a subsidiary of WSI; and **(4)** Tabor's activities establish venue in Philadelphia.

*(Footnote Continued)* ———————

and number of Philadelphia season pass holders was extremely small in relation to total number of season passes).

To elaborate, Woods Resources, a non-party, is a corporation affiliated with WSI. Woods Resources and WSI each have their own boards of directors, which nominally operate independently of one another. In reality, there is more than a little overlap, because Woods Resources' board members are also members of WSI's board, and WSI and Woods Resources share the same office complex. Doe also contends that WSI and Woods Resources share the same bank account.[4] As recently as February 2015, Woods Resources' and WSI's boards had identical membership. On at least one occasion, Woods Resources' board adjourned and then immediately convened as WSI's board, substituting one hat for another.

Woods Resources has an affiliate agreement with Tabor, which operates Tabor House in the Germantown section of Philadelphia. Although Tabor has a separate board of directors and separate employees from Woods Resources, Doe claims that Woods Resources pays Tabor's operation costs from a bank account that Woods Resources shares with WSI. Thus, Doe concludes, Tabor is a subsidiary of Woods Resources, which makes Tabor a subsidiary of Woods Resources' alter ego, WSI.

_____

[4] Doe's claim that that Woods Resources and WSI share a bank account is questionable. As support for this claim, Doe cites to page 24 of the transcript of oral argument on the Woods entities' preliminary objections. In this excerpt, counsel for the Woods entities described the overall structure of the Woods entities, but she did not explicitly state that Woods Resources and WSI share a bank account. Nevertheless, for purposes of this appeal only, we will assume that WSI and Woods Resources share a bank account.

Although Doe's argument has some intuitive appeal, it is not in harmony with the law. Corporations and their subsidiaries are separate and distinct legal entities. *Shared Communication Services of 1800 JFK Boulevard, Inc. v. Bell Atlantic Properties, Inc.*, 692 A.2d 570, 573 (Pa.Super.1997). The subsidiary's acts are not imputed to the parent corporation for the purpose of establishing venue against the parent. *Wimble v. Parx Casino and Greenwood Gaming & Entertainment, Inc.*, 40 A.3d 174, 178-79 (Pa.Super.2012). In *Wimble*, a personal injury action against a Bucks County casino (Greenwood Gaming), we affirmed the transfer of venue from Philadelphia to Bucks County despite evidence of acts in Philadelphia by the casino's sister corporations. We reasoned:

> The entirety of Greenwood Gaming's corporate activities occur in Bucks County. The underlying incident happened in Bucks County on the premises of Greenwood Gaming's only business location. Greenwood Gaming's advertising activities in Philadelphia do not amount to conducting business in that county …
>
> Like the trial court, we reject [the plaintiff's] argument that the Philadelphia operations of Greenwood Gaming's sister corporations should be attributed to Greenwood Gaming itself for purposes of determining venue. Although a parent and a wholly-owned subsidiary share common goals, they are still recognized as separate and distinct legal entities. [*Shared Communication, supra*] [The plaintiff] does not cite, and we have not found, any case law supporting the notion that a corporation may be subject to venue based solely upon the business activities of a sister corporation in the jurisdiction in question.

*Id*. at 178-79. The same state of affairs exists today. Doe cites no caselaw, state or federal, which subjects a corporation to venue based on the

- 9 -

activities of its subsidiary. Nor can we find any. Thus, we decline to attribute Tabor's activities in Philadelphia to the Woods entities for the purpose of deciding venue.

For these reasons, we affirm the order sustaining the Woods entities' preliminary objections and transferring venue to Bucks County.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2016